UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | NO. 2:14-CR-0207-01 |
| | * | |
| VERSUS | * | CHIEF JUDGE DEE D. DRELL |
| | * | |
| FRANKIE MALDONADO | * | MAGISTRATE JUDGE PEREZ- |
| | * | MONTES |

* * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR ACCESS

The Associated Press ("AP") respectfully submits this memorandum in support of its motion for access to the transcript of the proceedings in the trial of this criminal case on December 6, 2016.  As shown, the public has constitutional and common law rights of access to criminal trial proceedings, including transcripts of *voir dire* proceedings. This Honorable Court therefore should make the requested transcripts available for the public's inspection.

## INTRODUCTION

The allegations in this criminal case were serious.  The Government charged Defendant Frankie Maldonado with two counts of production of child pornography and one count of travel in interstate commerce for the purposes of engaging in illicit sexual conduct with a minor.  R. Doc. 1.

A jury trial commenced on December 6, 2016, Judge Patricia Minaldi presiding.  Court minutes reflect that court opened at 10:40 a.m. and adjourned at 11:22 a.m.  R. Doc. 61.  The proceedings included *voir dire* and an in-chambers conference, both of which were transcribed by the court reporter.  The minutes state: "Jury voir dire began.  An in chambers conference was held.  Court adjourned until December 7, 2017 9:00 A.M."  R. Doc. 61.

1184082v.1

Court did not resume on December 7, 2016.  Instead, the Honorable Chief Judge Dee D. Drell entered an order cancelling trial.  The order stated "Judge Minaldi is no longer assigned to this case.  A new trial date will be fixed by separate order."  R. Doc. 62.

Maldonado was eventually tried on January 4, 2017 and convicted of all three charges. R. Doc. at 75.  He was sentenced to a 40-year prison term.

There are several important public interests at stake in this case:  The public has a general interest in the administration of criminal proceedings.  And here, the public has a special interest in the administration of criminal proceedings against a defendant alleged to have sexually exploited a local minor.

The public not only has important interests in this case, it has a constitutional right to know what transpired in this case. The public's right of access to criminal proceedings is well-established and includes not merely the right to attend live proceedings but to inspect transcripts of those proceedings.

Those interests and rights notwithstanding, portions of this case have been withheld from the public's view.  A potentially critical part of the proceedings on December 6, 2016 apparently was conducted in Judge Minaldi's chambers, behind closed doors.  The transcripts of the *voir dire* proceedings, and the in-chambers conference that was held after those proceedings were abruptly halted, remain invisible to the public; the transcripts appear to have been filed under seal, without requisite on-the-record findings that confidentiality was justified or permitted by law.  There also are no docket entries on PACER for what should be record documents number 38, 55, 60, 65, 80, and 81.  Without docket entries, the public cannot fully know what business has transpired in its courts.

2

The AP shows below: 1) the public has a constitutional right of access to court proceedings that includes access to transcripts of *voir dire* proceedings, 2) in addition the public has a common law right of access that includes the right to inspect and copy judicial records, and 3) a court may not deny these rights of access without notice and hearing, followed by specific, on-the-record findings.

## ARGUMENT

**I.     The public has a constitutional right of access to court proceedings that includes access to transcripts of *voir dire* proceedings.**

The public's constitutional right of access to criminal proceedings, including *voir dire* proceedings, is firmly established.  *See, e.g.*, *Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 571 (1980) (public right of access applies to criminal trials); *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 505–08 (1984) (public right of access applies to *voir dire* transcripts); *United States* v. *Antar*, 38 F.3d 1348, 1357–58 (3rd Cir. 1994) (public right of access applies to *voir dire* transcripts).  This right is premised on "the common understanding that 'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.'" *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 604 (1982) (citation omitted).  The right of access allows "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government."  *Id.* at 606.

Access to jury selection "allows the public to verify the impartiality of key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in that system."  *In re Globe Newspaper Co.*, 920 F.2d 88, 94 (1st Cir. 1990).  Public dissemination of information about jurors "serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it."  *Id.*  In addition, public access to information about jurors can help uncover bias or "deter

3

intentional misrepresentation at *voir dire*." *Id.*

In *Press Enterprise*, the trial court denied a request for a transcript of *voir dire* proceedings in a high profile rape trial. The stated purpose for the trial court's closure of the jury selection process was to protect juror privacy and to ensure a fair trial. Relying on the historic tradition of openness of jury *voir dire,* the Supreme Court held that the presumption of openness applies to *voir dire* and reversed the trial court's closure. *Id.* at 513. In so holding, the Court observed that "**since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown**." *Id.* at 505 (emphasis added). The Court further observed that closures must be "rare and only for cause shown that outweighs the value of openness." *Id.* at 509. The Court acknowledged that the preservation of juror privacy is a valid concern, but said that the trial court erred by failing to consider less drastic alternative measures to protect juror privacy. *Id.* at 510; *see also In Re Dallas Morning News Co.*, 916 F.2d 205, 206–07 (5th Cir. 1990) (district court erred in closing *voir dire* proceedings absent consideration of alternatives other than "extraordinary measure of a closed proceeding").

II.     **The public also has a common law right of access that includes the right to inspect and copy judicial records.**

In addition to the constitutional right of access, the public has a well-established common law right of access to criminal proceedings that includes the right to inspect and copy judicial records, exhibits, and other evidence. *See, e.g., Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). *See also SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (outlining the presumption of access to court records); *Leucadia, Inc. v. Applied Extrusions Technologies, Inc.*, 988 F.2d 157,

161-65 (3rd Cir. 1993) (recognizing "a pervasive common law right to inspect and copy …
judicial records and documents"); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir.
1981) (recognizing the public's right of access to judicial records).  Like the constitutional right
of access, the common law right of access, by permitting the public to observe and inspect
criminal proceedings, promotes the integrity of, and respect for, the judicial system. *See, e.g.,
Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004); *In re Gitto Global Corp.*, 422 F.3d
1 (1st Cir. 2005).

### III.    A court may not deny the public's rights of access without notice and hearing, followed by specific, on-the-record findings.

In view of the foregoing principles, a court may not deny the public's rights of access
without notice and hearing followed by specific, on-the-record findings.

"[I]f a court contemplates sealing a document or transcript, it must provide sufficient
notice to the public and press to afford them the opportunity to object or offer alternatives. If
objections are made, a hearing on the objections must be held as soon as possible." *Phoenix
Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998).  "These requirements are
'not mere punctilios, to be observed when convenient.'" *In re Hearst Newspapers, L.L.C.*, 641
F.3d 168, 183 (5th Cir. 2011), *as revised* (June 9, 2011) (*citing Phoenix Newspapers*, 156 F.3d at
951).  "The trial court cannot properly weigh the First Amendment right of access against the
interests served by closure, nor can it fully consider alternatives to closure, without providing
notice and an opportunity to be heard to the press and public." *Id.*

The presumption of public access is strong and may be overcome only if "countervailing
interests heavily outweigh the public interests in access." *See, e.g., Rushford v. New Yorker
Magazine Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (*citing  Press-Enterprise, 464 U.S. at 510*).
The interest must be "overriding." *Richmond Newspapers*, 448 U.S. at 581 ("an overriding

interest articulated in the findings").  *See also Press-Enterprise*, 464 U.S. at 510 ("an overriding

interest based on findings that closure is essential to preserve higher values"); *United States v.*

*Chagra*, 701 F.2d 354, 365 (5th Cir. 1983) (same).  Any order must be "narrowly tailored to

serve that [specific] interest."  *Press-Enterprise*, 464 U.S. at 510.

A court may deny the public's rights of access only as "strictly and inescapably

necessary," based on findings clearly articulated on the record.  *See, e.g., United States v. Antar*,

38 F.3d 1348, 1361-63 (3d Cir. 1994); *The Associated Press v. United States District Court*, 705

F.2d 1143, 1145-46 (9th Cir. 1983); *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir.

1987).  Every closed proceeding or sealed document requires an independent determination,

based on particularized findings.  *E.g., Chagra*, 701 F.2d at 364-65 (5th Cir. 1983); *see also*

*Associated Press*, 705 F.2d at 1147; *United States v. Ladd*, 162 F.3d 503, 505-07 (7th Cir. 1998).

Specifically, the court must determine that no alternatives to closure exist.

In *Press Enterprise*, for instance, compelling interests arguably supported closing *voir*

*dire* proceedings to the public.  The Supreme Court nevertheless held that closure was error,

where the trial court "failed to consider whether alternatives were available."  *Press Enterprise*,

464 U.S. at 511.  "Even with findings adequate to support closure," "[a]bsent consideration of

alternatives," the trial court could not constitutionally close the *voir dire* proceedings or suppress

the transcript.

**IV.     The sealing of the transcripts in this case violates the public's rights of access.**

Here, in contravention of the foregoing, the transcripts of the December 6, 2016 *voir dire*

proceedings and in-chambers conference have been withheld from the public's view.  Because

the constitutionally required findings have not been made, the AP, and the public, is entitled to

access to the requested transcripts.

6

Additionally, the AP notes that shortly after the December 6, 2016 proceedings in this case were abruptly halted, Judge Minaldi took a leave of absence from the bench to seek treatment for alcoholism.[1]  Regarding her alcohol abuse, Judge Minaldi has been quoted publicly as saying:

> If there ever was an indication that I was unable to handle my duties because of alcohol, either the after-effects or current effects, proceedings did not go forward. There have been thousands and thousands of cases that I've handled where that was never even an issue, so those cases are not in jeopardy. But I can tell you any time there was a question about it, those proceedings were halted.[2]

In light of these events, the public has a particularized interest in the events and circumstances that led to the abrupt halt in the proceedings in this case on December 6, 2016, and there has been no showing made to override the public's constitutional and common law rights of access to the proceedings.

## CONCLUSION

The public unquestionably has a right to the transcripts of the proceedings in the trial of this criminal case on December 6, 2016.  The AP respectfully asks that this Honorable Court make the requested transcripts available for the public's inspection.

---

[1] *See In re Interdiction of Patricia Head Minaldi*, Case No. 2017-001042, 14th Judicial District Court, Parish of Calcasieu.

[2] *See* http://www.katc.com/story/35155008/federal-judge-speaking-out-after-rehab.

Respectfully submitted,


*/s/Loretta G. Mince*
Loretta G. Mince, # 25796 (T.A.)
Alysson L. Mills, # 32904
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
lmince@fishmanhaygood.com
amills@fishmanhaygood.com

*Attorneys for The Associated Press*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2017, I filed the foregoing with the Clerk of Court, and

served notice on all counsel of record via email.


*/s/Loretta G. Mince*
Loretta G. Mince, # 25796

8

1184082v.1