RECEIVED
AUG 26 2019
TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
Alexandria Division

FRANKIE MALDONADO, )
)
    Petitioner, )
)
v. )
)
UNITED STATES OF AMERICA, )
)
    Respondent. )
)
_____ )

MEMORANDUM IN SUPPORT OF MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE FILED BY A
PERSON IN CUSTODY PURSUANT TO 28 U.S.C. § 2255

    Frankie Maldonado, Petitioner herein, and Defendant in the underlying criminal proceedings, proceeding pro se, herewith files this Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence by a Person in Custody Pursuant to 28 U.S.C. § 2255 ("Memorandum"). The Motion to Vacate, Set Aside, or Correct Sentence by a Person in Custody Pursuant to 28 U.S.C. § 2255 with which this Memorandum is filed shall be referred to herein as "2255 Motion"

## STATEMENT OF THE CASE

    This § 2255 follows the conviction of Mr. Maldonado. Mr. Maldonado, at trial for two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). The convictions are based on the government's theory

of Mr. Maldonado's sexually exploitive relationship with a fifteen-year-old girl (hereinafter "CE"), which culminated in Mr. Maldonado traveling to Louisiana to have sex with CE. Mr. Maldonado raises ineffective assistance of counsel, prosecutorial misconduct, and actual innocence as grounds for his § 2255 petition.

A. <u>Offense Conduct</u>

Frankie Maldonado met CE in 2004, when CE was only three years old. CE and her younger sister (hereinafter "EE") had just moved to Charleston, South Crolina, to live with their father. ROA.352-53.[1] Mr. Maldonado was a friend of the girls' father, and was "like an uncle" to CE and her sister. ROA.353; ROA.486-88. In 2008, CE and EE moved with their father to New Mexico. ROA.488. Although Mr. Maldonado stayed in South Carolina, he regularly communicated with CE while she was living in New Mexico through phone calls and text messaging. At some point while CE was living in New Mexico, the government alleges that her conversations with Mr. Maldonado became romantic in nature. ROA493; ROA.554, but the record is void and silent to these messages.

In May 2014, CE and EE traveled to Anacoco, Louisiana, to stay with their mother and stepfather for the summer. ROA.356. Both CE and EE lacked cell phones when they arrived in Anacoco.

---

[1] Due to lack of the record, Mr. Maldonado cites to the Record on Appeal of his Direct Appeal. See <u>United States v. Maldonado</u>, Case No. 17-30381 (5th Cir. 2017).

Mr. Maldonado, however, sent cell phones to both girls, and paid the monthly service bill for the devices. ROA.357. Mr. Maldonado and CE exchanged messages by phone and computer daily.[2] In these messages, Mr. Maldonado frequently told CE that he loved her, and referred to her as "baby girl." ROA.359; ROA.1173-80. Mr. Maldonado also calls his daughter, Stephanie Maldonado, "baby girl" (affidavit of Stephanie Maldonado). The government alleged that Mr. Maldonado indicated that he intended to marry CE at some point, sending her a photograph of an apparent engagement ring and saving her number in his contact list under the name "C---- Maldonado." ROA.569. (This contact list was a Skype acount over which the user has no control of how a particular contact's name appears when that contact logs in. Contact names are set by the other user, similar to screen names.)

Mr. Maldonado and CE also spoke on the phone regularly. In some of these calls, the government alleges that Mr. Maldonado asked CE to sent photographs of her breasts and genital area, ROA.504, and that CE complied, sending Mr. Maldonado sexually explicit photographs. ROA.503. The record shows that Mr. Maldonado and CE also engaged in numerous Skype video-chat sessions. during these sessions, the government alleges that CE would, at Mr. Maldonado's request, exponse herself and masturbate. ROA.504.

---

2   In addition to regular text messaging via phone, Mr. Maldonado and CE used an application called "TextNow," which allowed them to text each other via an internet connection. This allowed CE to use the home's computer to message Mr. Maldonado. ROA.491.

A forensic analysis of Mr. Maldonado's phone and CE's phone revealed that in June, 2014, CE had taken a picture of her vagina and had sent it to Maldonado via text. The image was found on his phone as a deleted file. ROA.4232, 471, 662. There is no evidence to show that Mr. Maldonado requested this picture or any other illegal act under § 2251. Specifically, no evidence was presented that Mr. Maldonado employed, used, persuaded, induced, enticed, or coerced CE with any intent to engage in any sexually epxlicit conduct for the purpose of producing any visual depiction of such conduct. Even more so, Mr. Maldonado did not know or have reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce.

### PROCEDURAL HISTORY / STATEMENT OF FACTS

Mr. Maldonado was charged with production of child pornograqpy in violation of 18 U.S.C. § 2251(c) [Count 1]; production of child pornography in violation of 18 U.S.C. §2251(a) [Count 2]; and traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b) [Count 3]. See (Doc. 1).

Mr. Maldonado was sentenced after being found guilty by a jury of all three counts after a plea of not guilty on April 25, 2017. (Doc. 98) to a term of 360 months as to count 1; 360 months as to count 2, to run concurrent with count 1; 120 months as to count 3 to run consecutive to counts 1 and 2, with credit for time served in the custody of the U.S. Marshals service (Doc. 98).

<u>GROUNDS FOR RELIEF</u>

Ground 1:  Ineffective Assistance of Counsel; failure to argue Mr. Maldonado's sentence is substantially and procedurally unreasonable, including supervised release, and that the sentence violates RFRA, <u>Apprendi</u>, the First Amendment, and statutory law.

Counsel was ineffective for failing to argue that Mr. Maldonado's criminal history was imporoperly calculated. Specifically, his prior conviction for assault and battery on 12/6/1994 could not be scored three points pursuant to U.S.S.G. § 4A1.2(e)(1) uses "imposed" more than 15 years from the commencement of his status offense. When Mr. Maldonado violated his new sentence in 1997 only can relate to his 1994 conviction. This requires that it be imposed within 10 years. § 4A1.2(e)(2). Because neither of these applies, the conviction is too old and cannot be used. U.S.S.G. § 4A1.2(e)(3).

This changes his criminal history category from a category III to a category II and dramatically changes his advisory guidlines from 360 months to life to 324 months to 405 months (notwithstanding arguments below on improper enhancements). Courts are required to first correctly calculate the guidelines <u>Rita v. United States</u>, 551 U.S. 338 (2007) and prejudice occurs any time he is given any time in excess of what he would have gotten. <u>Glover v. United States</u>, 531 U.S. 198 (2001)

Mr. Maldonado also argues that counsel was ineffective and this court erred in adding two points for use of a computer as this amounts to double counting, and erred in adding two points for sexual act when it could not be proven by a preponderance of the evidence.

Mr. Maldonado also asserts that his sentence violates his rights under RFRA and should be considered in unison with § 3583(a). See, 42 U.S.C.s. 4 2000bb-1(a), (b). Also see, U.S. Const., Art. I.

Mr. Maldonado additionally argues that his supervised release coupled with his prison sentence violates the Constitution, separation of powers, Apprendi, and Alleyne.

Ground 2:   Counsel was ineffective for failing to raise a violation of double jeopardy, confrontation clause; motion to suppress, attempt to impeach C.E., acquire expert witness, GPS information, alibi and mitigating witnesses, computer forensics, and other mitigating information.

A.  Confrontation Clause

The Fifth Circuit Court of Appeals held "Where, as here, a confrontation clause objection was not asserted in the district court, we review for plain error only." See, United States v. Maldonado, 724 Fed. App'x 337 (5th Cir. May 29, 2018) (unpublished).

The Sixth Amendment guarantees Petitioner the right to competent counsel. U.S. Const. Amend. VI, Strickland v. Washington, 466 U.S. 668 (1984), and the due process clause requires that he is able to confront his accusers. See, Crawford v. Washington, 541 U.S. 36 (2004); Amend. VI Confrontation Clause. Under Crawford, the category "testimonial statements" applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. Id. It is a "trial right," designed to

prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. Pennsylvania v. Ritchie, 480 U.S. 39 (1987)(plurality opinion)."It is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the confrontation clause." California v. Green, 399 U.S. 149 (1970).

Because the Fifth Circuit held that trial counsel failed to argue that the district court violated petitioner's constitutional rights to confront his accusers. Prejudice resulted because there is a reasonable likelihood that if counsel had made the constitutional argument, the district court would have allowed him to impeach the witness, and the jury would not have convicted petitioner. Prejudice would result even if the district court denied counsel to impeach C.E., because the issue would have been preserved for appeal. There is a reasonable likelihood that the court of appeals would have ordered a new trial. Grounds for impeachment are argued below.

1. Failure to Impeach C.E.

Counsel was ineffective for failing to impeach C.E., a government witness with many prior inconsistent statements. See, Daniels v. Maggio, 669 F.2d 1075, 1079 (5th Cir. 1982). Prejudice is clear: without the testimony of C.E., the govnerment would have no case and Petitioner would not have been convicted. At the very least, he would be able to succeed on a motion for acquittal. See, Fed. R. Crim. P. 27.

C.E. admits to not being "totally truthful" to the police. (Pg. Id. 1239). C.E. admits that Petitioner did not want to pick her up, but she pressed the issue. (Pg. Id. 1247). C.E. claims she was a virgin (Pg. Id. 1240) but sends a text message saying that she was not a virgin (C.E. transcript at 14). C.E. claims they would make out, Id. at 9, which is contrary to a previous statement. Id. at 7. Officer asked where the picture of them having sex was, Id. at 10. She responds in the car near her home. Id. at 10. Also see, Pg. Id. 1261. She then later said they had sex in the motel (Pg. Id. 1227, 1230). Yet, the police said she never went to his motel (C.E. transcript at 8) and also contrary to previously having said they never went some place to be alone. Id. at 9 cf. 6.

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, Chambers v. Mississippi, 410 U.S. 281 (1975), or in the compulsory process or confrontation clauses of the Sixth Amendment, Washington v. Texas, 388 U.S. 14, 23 (1967); Davis v. Alaska, 415 U.S. 308 (1974), the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." See, California v. Trombetta, 467 U.S. 479, 485 (1985); cf. Strickland v. Washington, 466 U.S. 668, 684-85 (1984)("The constitution guarantees a fair trial thrtough the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment.")

An essential component of procedural fairness is an opportunity to be heard. See, Crone v. Kentucky, 476 U.S. 683, 690 (19  )(citing In re Oliver, 333 U.S. 257, 273 (1948); Grannis v. Ordean, 243 U.S. 385, 394 (1914). The exclusion of such testimony, which bears on the credibility of the accuser, which was already in doubt, deprived Petitioner of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 656 (1984); Washington v. Texas, supra, at 22-23 (1967). All of this is generally invoked with regard to the presentation of evidence and theories of innocence at the defendant's trial. See, Nevada v. Jackson, 569 U.S. 505, 509 (2013); Kittelson v. Dretke, 426 F.3d 306, 318-19 (5th Cir. 2005).

This sole case rests on the testimony and credibility of C.E. She also admits that she had given false information to the police because she was scared, and then claimed "It was my first time ever having sex." Despite all the previous testimony that was shown to be false, just as was this very statement. As memorialized in a facebook text exchange, however, C.E. had previously told Mr. Maldonado that she twice previously had sex with a particular named person. The court u upon the government's objection sustained any further cross-examination on the ground that evidence of her prior sexual conduct was inadmissible under Fed. R. Evid. 412.

However, the exceptions under Fed. R. Evid. 412(b)(1)(B) and 412(b)(1)(C) apply. Section B applies because the government

offered evidence that the accused's sexual misconduct (sexual intercourse with a 15-year-old girl) and Petitioner has a Constitutional right to disprove those allegations. The right to cross-examine one's accusers effectively is a primary interest secured by the confrontation clause of the Sixth Amendment. <u>Davis v. Alaska</u>, 415 U.S. 308, 315 (1976). "Cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested." <u>Wilkerson v. Cain</u>, 233 F.3d 886, 890 (5th Cir. 2000)(quoting <u>Davis</u>, 415 U.S. at 316). Accordingly, cross-examination shuold be given the largest possible scope. <u>Carrillo v. Perkins</u>, 723 F.2d 1165, 1168 (5th Cir. 1984). The central concern of the confrontation clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. <u>Maryland v. Craig</u>, 497 U.S. 836, 845 (1990). The government already conceeds that trial counsel had ample opportunity to impeach C.E.'s credibility. (Appellee's Brief at 21-22.)

To cast further doubt on C.E.'s version, some pictures and text messages recovered from Mr. Maldonado's phone were not also on her phone. ROA 531; ROA 540-41, which the government concedes. (Appellee's Brief at 22). The government also concedes to "apparent inconsistencies between C.E.'s version of events and the sex acts depicted on the photographs." ROA 546; Appellee's Brief at 22.

2. <u>Failure to acquire expert witness</u>

Counsel failed to obtain or even attempt to acquire an expert witness in GPS tracking/pictures, computer forensics. The failure to follow the designated procedure to obtain funds for an expert witness, or to preserve the rejection of such a request for appellate review, is per se deficient performance. <u>Hinton v. Alabama</u>, 471 U.S. 263, 274 (2014).

With an expert witness, Petitioner would have been able to show the pictures were not taken while he was in the same state as C.E., the picture of the woman laying down was not C.E.

Counsel was ineffective when he failed to investigate, reach out, consult, or even consider hiring an expert witness. If he would have done so, any expert would testify that at the time the pictures were taken, Petitioner was not with C.E. This would be further corroborated by affidavits of Betty Simmons, Stephanie Maldonado, and Francisco Lewis, who would all testify that Petitioner was in South Carolina during the month of July 2014. This fact is vital to the case, because the metadata on the pictures will show they were also taken during this time. ※ The other pictures alleged were admittedly taken by her sister. (Pg. Id. 1250, June 16, 2014). Metadata, GPS information, alibi witnesses, computer forensics would all support Petitioner's defense and all goes to guilt or innocence. Because the outcome would have more than likely been different, prejudice results from counsel's ineffective or deficient performance.

- 11 -

3. <u>Failure to suppress</u>

Counsel was ineffective for failing to move the District Court to suppress evidence obtained from C.E.'s cell phone. The search which obtained information was executed 1) without a warrant, and 2) under false information given by Jason Lamons, C.E.'s stepfather. Jason Lamons signed a consent form authorizing law enforcement to search the phone stating that he was 1) the owner of the phone, or 2) that he was the parent or legal guardian of the child. Neither of these is correct. As her stepfather, he did not have authorization to grant permission for the seach conducted. This constitutes illegal search and seizure.

This type of illegal search is specifically prohibted by the Constitution's Fourth Amendment. The Courts have consistently held that false information given during the execution of even a warranted search - which this was not - has the negating effect of false information given during the application for a search warrant. This applies to information that is knowingly false; Jason Lamons knew that he was not the owner of the phone, yet he signed documents stating that he was the owner in order to give false consent to law enforcement to have the phone searched.

GROUND 3: The Government committed prosecutorial misconduct by failing to elicit the truth from C.E. and provide <u>Brady</u> / <u>Jencks</u> material.

The applicable law is clear that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. <u>Giglio v. United</u>

- 12 -

States, 405 U.S. 150, 153 (1977); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 505, 519 (5th Cir 1996). However, to obtain relief with respect to such a claim, a petitioner must show that (1) the testimony in question was actually false, (2) the prosecutory knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003). "Evidence is 'false' if, inter alia, it is specific misleading evidence important to the prosecution's case in chief. False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict." Id.

C.E. said she was 100% positive they never went anywhere to talk or be together when Petitioner came down. (Statement to Det. p.6-7), that they never had a physical relationship or kissed. Id. at 7. Then she claimed they did kiss at some point (p.7), but does not know where that would have happenend (P.7). then, she remembered kissing in the car, but didn't remember where. (P.8;) C.E. claimed they never stayed at a hotel (p.8) but on direct, she said they went to a Highway 8 motel. (Pg. Id. 1226.) C.E. further stated that they would only hang out at the road near Mr. Caswell's property, also contrary to "never gone anywhere" (p.6-7, or went to a hotel (Pg. Id. 1226). Also see, p.9. She also claims that the picture of them allegedly having sex in the car (p.10

When C.E. was asked if they ever talked about them having sex when he came down (Pg. Id. 1225) she said no. Id.; also see, Pg. Id. 1233-34. C.E. admits Petitioner did not want to

pick her up but she pressed the issue (Pg. Id. 1243). The picture does not prove it is C.E. in the photo. She admits that she was not totally truth ful to the police (Pg. Id. 1239) and she was a virgin when she allegedly encountered Petitioner (Pg. Id. 1240).

The record is also clear as argued in Arguments I and II, supra, the government's most vital witness (C.E.) was an habitual liar. This false tetimony was used to secure a conviction against Petitioner and had an effect on the outcome of the trial, in violation of Napue, 360 U.S. at 273; Brady v. Maryland, 373 U.S. 83 (1963); Jencks § 3500; Giglio, 405 U.S. 150, 153 (1972); Fed. R. Crim. P. 12(b)(4), 26.2. The government failed to elicit the truth from C.E. and failed to provide exculpatory evidence. Petitioner reiterates as though fully set forth herein, incorporating argument II, supra.

GROUND 4: Petitioner is actually innocent of all counts as charged.

Due to arguments I-III, Petitioner argues his actual innocence of all crimes alleged in the indictment. Had the prosecution not engaged in blatant misconduct, and Petitioner's conusel not been egregiously ineffective, Petitioner's innocence would have been a foregone conclusion, resulting in his definitive acquittal.

## CONCLUSION

WHEREFORE, in light of the foregoing and with good cause showing, Petitioner hereby prays this Honourable Court accept and GRANT this, his Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and ORDER Petitioner's sentence be vacated, and he be remanded to the District Court for a new trial, and any other relief this Court deems just and equitable.

## DECLARATION

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements and information contained therein are true and accurate to the best of my information and belief.

RESPECTFULLY SUBMITTED, this 19th day of August, 2019.

*Frankie Maldonado*
Frankie Maldonado
Petitioner
in propria persona

Frankie Maldonado
#27856-171
FCC Petersburg - Medium
P.O. Box 1000
Petersburg, Va 23804

No Phone, No Fax, No E-mail

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 was mailed, postage prepaid, to the following parties:

United States District Court
Office of the Clerk
300 Fannie Street - Suite 1167
Shreveport, LA 71101-3083
Certified USPS Mail #
7018 1830 0002 2454 6504

United States Attorney's Office
ATTN: T. Forrest Phillips
800 LaFayette Street - Suite 2200
LaFayette, LA 70501

MAILED, this 19th day of August, 2019.

7018 1830 0002 2454 6504

*Frankie Maldonado*
Frankie Maldonado
Petitioner
in propria persona

Frankie Maldonado
#27856-171
FCC Petersburg - Medium
P.O. Box 1000
Petersburg, VA 23804

No Phone, No Fax, No E-mail

- 16 -