UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 1:14-CR-00207-01** |
| **VERSUS** | **JUDGE DRELL** |
| **FRANKIE MALDONADO** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## RULING AND ORDER

Before the court is a motion entitled "Motion for Emergency Compassionate Release" filed pursuant to Under 18 U.S.C. § 3582 (c)(1)(A)(i) by defendant Frankie Maldonado ("Defendant" or "Maldonado"). (Doc. 164). The government timely filed its response in opposition to Maldonado's motion. (Doc. 166). Maldonado provided a reply to the government's response. (Doc. 167). The motion is, accordingly, fully briefed and properly before the court for disposition. Having carefully reviewed the record in this case, as well as relevant law and jurisprudence, the court has determined that the motion will be DENIED for the reasons fully explained below.

**I.      Background**

In a 2014 indictment, Maldonado was charged with a first and second count of production of child pornography each in violation of 18 U.S.C. § 2251(a) and a third count of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b). (Doc. 1). On January 4th, 2017, a jury entered a verdict finding Maldonado guilty of all charges. (Doc. 75). On May 5th, 2017, this court sentenced Defendant to 360 months for each the first and second count running concurrently and 120 months for the third count running consecutively with the first and second count, with credit for all time served in custody of the U.S. Marshal Service. (Doc. 98). Maldonado is currently incarcerated at FCI Petersburg-Medium in

1

Hopewell, Virginia, a Bureau of Prisons ("BOP") facility. Maldonado is seeking compassionate release because of the spread of COVID-19 at FCI Petersburg-Medium and underlying medical conditions which he claims increase his risk of severe illness from COVID-19.

## II.  Law and Analysis

The compassionate release provision, as amended by the First Step Act of December 2018, provides in relevant part:

> (c) Modification of an imposed term of imprisonment. -- The court may not modify a term of imprisonment once it has been imposed except that --
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
> > >
> > > (i) extraordinary and compelling reasons warrant such a reduction ...
> > >
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ...

18 U.S.C. §3582 (c)(1)(A).

The Fifth Circuit has made clear that exhaustion of all administrative rights of appeal is a mandatory claim-processing rule. United States v. Franco, 973 F.3d 465, 468 (5th Cir. 2020). The court must then find, after consideration of the factors set forth in 18 U.S.C. § 3553(a) that (1) extraordinary and compelling reasons warrant a sentence reduction and (2) any sentence reduction is consistent with applicable Sentencing Commission policy. 18 U.S.C. §3582 (c)(1)(A). Because

the factors set forth in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy present consistent concerns, each will be discussed together.

    A. Exhaustion of Remedies

Motions for sentence reduction under Section 3582(c)(1)(A), most often referred to as "compassionate release" motions, may be filed at the inmate's request by the Bureau of Prisons ("BOP") or by the inmate himself after exhaustion of his administrative remedies. The First Step Act amended § 3582(c) to provide an inmate an avenue to file a compassionate release motion on his own behalf after being denied relief by the BOP. Prior to the First Step Act, an inmate's only avenue to compassionate release was through the filing of a motion on his behalf by the BOP. United States v. Cantu, 423 F.Supp.3d 345, 347 (S.D. Tex. 2019). The exhaustion requirement for motions filed directly by an inmate is mandatory and a jurisdictional prerequisite in this court. Ross v. Blake, 136 S.Ct. 1850 (2016); United States v. Chambliss, 948 F.3d 691, 692-93 (5th Cir. 2020). Section 3582(c)(1)(A) provides that prisoners may: (1) file a motion with the court after fully exhausting all administrative rights to appeal the BOP's decision not to file a motion for compassionate release, or (2) file a motion with the court after requesting release when there has been a lapse of thirty (30) or more days from the receipt of such request by the warden of the defendant's facility, whichever is earlier. In each instance, the court will consider the inmate's administrative remedies fully exhausted. 18 U.S.C. §3582(c)(1)(A).

Evidence before the court establishes that Maldonado did exhaust his administrative remedies regarding this claim for compassionate release by first petitioning the Warden at FCI Petersburg-Medium on August 28, 2020 for relief. (Doc 164 at pp. 2-3). The request was denied on October 6, 2020. (Doc 166 at p. 3). Accordingly, failure to exhaust is not at issue in this case.

B. Extraordinary and Compelling Reasons

A court must also find that "extraordinary and compelling reasons" warrant the requested reduction. 18 U.S.C. §3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; or (4) other reasons. U.S.S.G. § 1B1.13, cmt. n.1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Maldonado's motion contends that his medical conditions, which are normally manageable by the BOP health care system, increase his risk of severe illness from COVID-19. Courts have concluded that extraordinary and compelling reasons warranting release exist where (1) defendant has underlying health complications that will or may increase the risk of severe illness from COVID-19, and (2) the BOP facility in question is either not taking proper precautions to protect the inmates from COVID-19 or despite precautionary steps the spread of COVID-19 within the BOP facility is uncontrollable. See United States v. Samuels, 2020 WL 7265378, *4 (W.D.La,

2020)(concluding defendant presented extraordinary and compelling reasons to warrant his release after finding (1) defendant was diagnosed with conditions which increase the risk of severe illness from COVID-19, and (2) an increase of 65 cases of COVID-19 among inmates within his BOP facility within a four day period.); See also United States v. Ullings 2020 WL 2394096, *4-5 (N.D. Ga, 2020)(concluding defendant presented extraordinary and compelling reasons to warrant his release after finding (1) defendant was diagnosed with conditions which increase the risk of severe illness from COVID-19, and (2) the facility in which defendant was detained was not practicing precautionary steps to curb the spread of COVID-19 including socially distancing inmates and requiring guards and inmates to properly wear facemasks when feasible.)

Maldonado has been diagnosed with chronic obstructive pulmonary disease (COPD), asthma, emphysema, and type two (2) diabetes. Current CDC guidelines suggest that COPD, emphysema and type two (2) diabetes increase the risk of severe illness from COVID-19 and that asthma might increase the risk of severe illness from COVID-19. Ctr. For Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020; last visited Jan. 5, 2021). The government concedes Maldonado has underlying health complications that will or may increase the risk of severe illness from COVID-19.

Regarding the management of COVID-19 within FCI Petersburg-Medium, this Court understands each BOP facility is battling the COVID-19 pandemic the best it can with the resources it has available. The Court also recognizes that the BOP has made "extensive and professional efforts to curtail the virus's spread," see United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020), and that its operational procedures have been modified to combat any further spread.

Maldonado contends that on October 21, 2020, FCI Petersburg-Medium had twenty-eight (28) confirmed COVID-19 cases and that nine (9) were from Defendant's unit. Moreover, Defendant contends that on November 16, 2020, one (1) of the inmates that had previously tested positive was returned to Defendant's unit while suffering COVID-19 complications and health issues. At this point in the pandemic, it is well understood that a person who has contracted COVID-19 and is no longer infectious may have persistent complications as a result of COVID-19 including among others fatigue, shortness of breath, cough, chest pain, intermittent fever, heart palpitations, cardiovascular inflammation, pulmonary abnormalities. Ctr. For Disease Control and Prevention, *Longer-Term Effects of COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html#:~:text=Respiratory%3A%20lung%20function%20abnormalities, difficulty%20with%20concentration%2C%20memory%20problems (last updated Nov 13, 2020; last visited Jan. 6, 2021). The facts presented by Maldonado do not support a finding of that FCI Petersburg-Medium is failing to take proper precautions to protect inmates from COVID-19 or that the spread of COVID-19 with FCI Petersburg-Medium is uncontrollable. If anything, they suggest that FCI Petersburg-Medium is taking precautionary steps by quarantining inmates who test positive for a period of at least three weeks, well beyond the two week guideline set forth by the Center for Disease Control and Prevention.

Given these facts, as a first step in the analysis this Court does not find the existence of extraordinary and compelling reasons which may warrant consideration of Maldonado's release. While we are at liberty to stop at the analysis at this point, further discussion respecting the government's response in opposition to Maldonado's motion is appropriate.

C. Consideration of § 3553(a) factors and Reduction Consistent with Policies of the Sentencing Commission

The government's response in opposition to Maldonado's motion relies in significant part on the 18 U.S.C. § 3553(a) factors and the policies of the Sentencing Commission provided in U.S.S.G. § 1B1.13(2). (Doc. 166 at pp. 8-11). There is considerable overlap between the two and they will be discussed *en masse*.

18 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. In the context of compassionate release, other considerations include (8) risk of recidivism the defendant poses, (9) the time remaining on his sentence, (10) the quality of his release plan, and (11) the impact of the BOP's efforts to maintain the safety of inmates.

Applicable policies of the Sentencing Commission require that Maldonado must no longer be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires consideration of (1) the nature and circumstances of the charge, (2) the weight of evidence against defendant, (3) the history and

characteristics of defendant, and (4) the nature and seriousness of the danger to any person of the community at large that would be posed by defendant's release.

The Presentence Report ("PSR") undeniably reflects a troubled criminal history for Mr. Maldonado including among others numerous violent crimes, one violent crime towards a child, forgery, and possession with intent to distribute drugs near a school. (PSR ¶¶ 57-69). Additionally, on two occasions, Maldonado was found to be in violation of conditions of probation. (PSR ¶¶ 63, 67). Regarding the violations for which Defendant is currently incarcerated, as we observed, Maldonado was convicted of two (2) counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and one (1) count of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b). Maldonado engaged in electronic communication with a minor to solicit and receive nude photographs of her, crossed state lines to engage in sexual activity with the minor, actually engaged in sexual activity with the minor, and produced photographs of himself and the minor having sex. (PSR ¶¶ 16-25). Moreover, Maldonado was ordered to serve a total of 480 months in BOP custody for all three counts. Statutorily, a single count of Production of Child Pornography requires imprisonment not less than 15 years (180 months) nor more than 30 years (360 months), and a single count of Traveling to Engage in Illicit Sexual Conduct with a Minor requires imprisonment not more than 30 years. 18 U.S.C. §§ 2251(e), 2423(b). Maldonado has served 70 months, less than 6 years, by the time he filed this motion, which is less than 15% of his total sentence.

While this Court recognizes Defendant's claimed lack of disciplinary infractions while incarcerated and rehabilitation efforts (Doc 164 at pp. 7-8), the sum of the § 3553(a) factors and the § 1B1.13(2) policies do not support in any respect a finding that Maldonado is no longer a danger to the safety of any other person or to the community. Moreover, this Court does not find

that compassionate release, at this time, will be justified after consideration of the § 3553(a) factors set forth above.

### III. Conclusion

For the reasons enumerated above, it is hereby ORDERED that Defendant's motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

THUS DONE AND SIGNED at Alexandria, Louisiana this 21st day of January 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT